[No. 21113. In Bank.—May 2, 1894.]

## Ex Parte B. R. FOSS on Habeas Corpus.

CRIMINAL LAW—EXTRADITION OF FUGITIVES FROM JUSTICE—CRIMES NOT SPECIFIED IN TREATY—DISCRETION OF EXTRADITING GOVERNMENT.— When a treaty with a foreign government provides for the extradition of fugitives charged with particular crimes, the reciprocal duty of delivering up persons charged with crime is confined to the particular cases for which the treaty has provided; but the existence of a treaty providing for extradition for certain specified crimes does not deprive either nation of the power and right to exercise its own discretion in surrendering fugitives from justice in cases not coming within the terms of the treaty.

ID.—INCIDENT OF SOVEREIGNTY—COMITY—PRESUMPTION.—In relation to persons charged with offenses not named in the treaty, each government, as an incident of its sovereignty, may either grant or deny to the fugitive an asylum within its sovereignty or jurisdiction; and when a criminal is surrendered upon charge of a crime which is not extraditable under the treaty, it must be presumed that the surrender was made in the exercise of its own sovereign discretion, and as an act of comity.

ID.—SURRENDER NOT IN PURSUANCE OF TREATY—ORDER SETTING ASIDE INDICTMENT—REARREST FOR SAME OFFENSE—HABEAS CORPUS.—The rule that when a defendant has been surrendered in pursuance of a

treaty, for trial for a specified charge named therein, he cannot be placed upon trial for any other than the particular offense named in the extradition proceeding, does not apply where the defendant has not been surrendered in pursuance of the treaty; and the fact that he was surrendered for trial upon a particular indictment referred to in the warrant of arrest for extradition, and that such indictment was set aside upon his motion after extradition, does not entitle him to a discharge upon *habeas corpus* when rearrested upon a complaint charging him with the identical offense named in the indictment set aside.

Id.—Order Setting Aside Indictment—Res Adjudicata.—An order setting aside an indictment does not operate as an acquittal of the defendant for the offense therein charged, and is not a bar to his further prosecution for the same offense by indictment or information.

Hearing in the Supreme Court upon a writ of habeas corpus.

The facts are stated in the opinion of the court.

*C. E. McLaughlin*, and *W. W. Kellogg*, for Petitioner.

A treaty concluded between a foreign country and the United States is the supreme law of the land. (United States Constitution, art. VI; *United States* v. *Watts*, 8 Saw. 370, 371; Spear on Extradition, 221.) The offense of embezzlement or embezzlement of public moneys is not enumerated among the offenses for which extradition may be had in the treaty between the Hawaiian Islands and the United States. (Treaty with Hawaiian Islands, sec. 14; 7 Am. & Eng. Ency. of Law, p. 606; 2 Moore on Extradition, p. 1102; Spear on Extradition, pp. 74, 78, 80, 82, 111, 114; *Blandford* v. *State*, 10 Tex. App. 627, 638.) Where a treaty has been entered into, naming certain crimes as the ones for which extradition may be had, this must be regarded as declaring that only such offenses as are named in the treaty are extraditable. There is no authority to demand for any other. (1 Moore on Extradition, p. 50; 7 Am. & Eng. Ency. of Law, 617, 618; Wharton's Criminal Pleading and Practice, sec. 47; *United States* v. *Watts*, 8 Saw. 370, 372–79; *United States* v. *Rauscher*, 119 U. S. 407; Spear on Extradition, pp. 15–17.) A person brought from a foreign country can only be tried for an extraditable offense. (*People* v. *Gray*, 66 Cal. 271, 274; *Bland-*

*ford* v. *State,* 10 Tex. App. 627; Spear on Extradition, secs. 603, 604, p. 161; *Ex parte Hibbs,* 26 Fed. Rep. 421–31; *United States* v. *Watts,* 8 Saw. 370; *United States* v. *Rauscher,* 119 U. S. 407; *Ex parte Coy,* 32 Fed. Rep. 911; *Commonwealth* v. *Hawes,* 13 Bush, 697; 26 Am. Rep. 242; *State* v. *Vanderpool,* 39 Ohio St. 273; 48 Am. Rep. 431; 1 Moore on Extradition, p. 191.)  A right secured by treaty has the same effect as a defense as a right secured by act of Congress. (*Ex parte Hibbs,* 26 Fed. Rep. 421–31; *United States* v. *Rauscher,* 119 U. S. 407.) A person extradited cannot waive his rights or privileges under the treaty. (*Ex parte Coy,* 32 Fed. Rep. 911; 1 Moore on Extradition, 251, 252.) The charge upon which the defendant was arrested not having been proven, and the defendant having been released, he was entitled to a reasonable time thereafter in which to return to the country from which he was extradited. (7 Am. & Eng. Ency of Law, 617, 618, note 1; *United States* v. *Rauscher,* 119 U. S. 407; *Ex parte Hibbs,* 26 Fed. Rep. 421–31; Cooley's Practice Review, 176, quoted in 7 Am. & Eng. Ency. of Law, 618; Moore on Extradition, pp. 274, 275.)

*W. S. Webb, contra.*

DE HAVEN, J.—The petitioner, Foss, was indicted by the grand jury of the county of Plumas for the crime of embezzlement. At the date of the finding of this indictment the petitioner was in Honolulu, and there remained until February, 1894, when, upon the request of the American minister, and upon " a requisition to that effect" from the governor of the state of California, he was surrendered by the provisional government of the Hawaiian Islands to the agent appointed by the governor to receive and convey him back to this state, there to be tried for the offense with which he was charged in the indictment referred to.

The treaty between the United States and the government of the Hawaiian Islands in relation to the ex-

tradition of fugitives from the justice of either of such countries does not provide for the extradition of a person charged with the crime of embezzlement, and the warrant issued by the Hawaiian government for the arrest of the petitioner, and for his delivery to the agent appointed by the governor of this state to receive him into custody, does not refer to the treaty, but the proceedings preliminary to the issuance of such warrant were conducted in accordance with the rules prescribed by the treaty to effect the extradition of a person charged with either of the offenses for which extradition is there provided. The petitioner, upon his return to this state, was brought before the superior court of Plumas county, in which the said indictment against him was pending, and he then moved to set the indictment aside. The motion was granted, and he was discharged from custody, and within two hours thereafter a complaint was filed with a justice of the peace charging him with the same embezzlement named in the indictment previously set aside, and he was again arrested, and after examination held to answer the charge before the superior court of Plumas county; and he is now in the custody of the sheriff of that county awaiting his trial.

The petitioner claims that his imprisonment, under the circumstances here stated, is illegal, and he seeks to be discharged therefrom under the writ of *habeas corpus* upon which he has been brought before this court.

In support of this general contention he insists that his arrest in the foreign country, and enforced return to this state, and detention here for the purpose of being tried for the crime charged in the indictment, was, and is, in violation of his rights under the treaty between the United States and the government of the Hawaiian Islands. That treaty, in article XIV, provides: " The contracting parties mutually agree to surrender, upon official requisition, to the authorities of each, all persons who, being charged with the crimes of murder, piracy, arson, robbery, forgery, or the utterance of forged paper, committed within the jurisdiction of either, shall be

found within the territories of the other, provided that this shall only be done upon such evidence of criminality as, according to the laws of the place where the person so charged shall be found, would justify his apprehension and commitment for trial, if the crime had there been committed." (9 U. S. Stats. at Large, 981.) It is argued that the treaty, in thus enumerating the offenses for which fugitives who have sought an asylum in either country shall be delivered into the custody of the other upon demand of its government, in effect prohibits the surrender by either nation of a person charged with any other than one of the mentioned crimes; that the treaty is to be construed as containing an implied stipulation upon the part of the United States that a person committing any other crime against its laws than one of those named in the treaty, and who thereafter escapes to Hawaii, shall not be subject to arrest and return to the United States, there to be tried for such non-enumerated crime, even though the government of Hawaii should voluntarily surrender him for that purpose as a matter of comity. In our opinion the language of this treaty will not bear such a construction. It is, of course, true that, when a treaty provides for the extradition of fugitives charged with particular crimes, the reciprocal duty of delivering up to the justice of the other persons charged with crime is confined to the particular cases for which the treaty has provided. (*Commonwealth* v. *Hawes*, 13 Bush, 697; 26 Am. Rep. 242; *United States* v. *Rauscher*, 119 U. S. 407, 411, 412.) Thus, in *Commonwealth* v. *Hawes*, just cited, it is said: " The right of one government to demand and receive from another the custody of an offender who has sought asylum upon its soil depends upon the existence of treaty stipulations between them, and in all cases is derived from, and is measured and restricted by, the provisions, express and implied, of the treaty."

But while this is so, the existence of a treaty which provides for extradition for certain crimes does not deprive either nation of the power and right to exercise

its own discretion in cases not coming within the terms
of the treaty. It is only to the extent that the treaty
imposes an obligation to surrender persons charged with
particular offenses that there is any restriction placed
upon the sovereign right of the nation in which the
fugitive is found, to either permit or refuse to permit
his arrest and return to the country from which he has
fled. In other words, in relation to persons charged
with offenses not named in the treaty, each government,
as an incident of its sovereignty, may either grant or
deny to the fugitive an asylum within its jurisdiction.
This conclusion is so obviously correct that no extended
argument is necessary to sustain it, and the principle is
thus stated in section 269 of volume 2 of Wharton's In-
ternational Law Digest: " The rule *expressio unius est ex-
clusio alterius* applies to extradition treaties; and under
such treaties process can be sustained only for enumer-
ated offenses. This, however, would not preclude in
extraordinary cases, and an appeal, not on the basis of
the treaty, but on the ground of comity, for surrender
of a fugitive charged with a non-enumerated offense,
when such offense is one which would justify such an
extraordinary measure. . . . . Thus, in 1796, the secre-
tary of state (Mr. Pickering), 'expresses his concurrence
with Mr. Liston (British minister at Washington), in
the opinion that while the reciprocal delivery of mur-
derers and forgers is expressly stipulated in the 27th
article of our treaty with Great Britain, the two govern-
ments are left at liberty to deliver other offenders as
propriety and mutual advantage shall direct. . . . . The
attorney general has just called, and thinks the opinion
expressed to be correct.' (Mr. Pickering to the presi-
dent, June 3, 1796. MSS. Dom. Let.) In a letter of
same date to the governor of Vermont, Mr. Pickering
says: 'The reciprocal delivery of murderers and forgers
is positively stipulated by the 27th article of the treaty;
the conduct of the two governments with respect to
other offenders is left, as before the treaty, to their mu-
tual discretion, but this discretion will doubtless advise

the delivery of culprits for offenses which affect the great interests of society.' "

.The crime with which the petitioner is charged not being an extraditable offense under the treaty between the United States and the government of the Hawaiian Islands, it must be presumed that the surrender of the petitioner was made by the latter in the exercise of its own sovereign discretion and as an act of comity. This violated no right secured to the petitioner by the treaty referred to, as that treaty does not in terms, or by necessary implication, deny to that government the right to surrender, or deprive the United States of the right upon such surrender to receive into its custody, fugitives charged with offenses not enumerated in the treaty. The cases of *United States* v. *Rauscher*, 119 U. S. 407; *Commonwealth* v. *Hawes*, 13 Bush, 697; 26 Am. Rep. 242; *United States* v. *Watts*, 8 Saw. 370; *Ex parte Hibbs*, 26 Fed. Rep. 421, cited and relied upon by petitioner, do not sustain his contention upon this point. Those cases simply declare that when a defendant has been surrendered *in pursuance of a treaty* for trial upon a specific charge named therein, he cannot be placed upon trial for any other than the particular offense *named in the extradition proceeding.* This rule is well settled, but it has no application whatever to the case presented by the petitioner here.

It is also contended in behalf of petitioner that he was only surrendered by the government of the Hawaiian Islands for trial upon the indictment referred to in the warrant issued by that government commanding his arrest and delivery into the custody of the agent authorized to convey him back to this state, and that when this indictment was set aside he had fully met his accusation and was entitled to a reasonable time within which to return to the foreign asylum, and that he cannot be lawfully detained here to answer the complaint upon which he is now held for trial before the superior court. If it should be conceded that a fugitive from justice, surrendered by a foreign government on grounds

CII. CAL.—23

of comity, has the same right to his discharge upon *habeas corpus*, when imprisoned upon a different charge than that for which he was delivered up, as if he had been extradited under the provisions of a treaty, and arrested and detained for trial upon another offense than that named in the extradition proceedings, in violation of the implied provisions of the treaty, still we do not think the petitioner here would be entitled to a discharge upon the facts appearing in this record. The order setting aside the indictment did not operate as an acquittal of the petitioner for the offense therein charged, and is not a bar to his further prosecution for the same offense by indictment or information. And as he is now held by virtue of an order of commitment based upon a complaint charging him with the identical offense named in the indictment set aside, and to answer which he was surrendered by the Hawaiian government for trial by the state, the petitioner should be remanded.

Petitioner remanded.

BEATTY, C. J., HARRISON, J., and GAROUTTE, J., concurred.

McFARLAND, J., dissenting.—I dissent. The petitioner, Foss, was indicted by the grand jury of Plumas county, in this state, for the crime of embezzlement. At the time of the indictment he was in the Hawaiian Islands. A requisition was made upon the government of the islands for his extradition here to answer the charge preferred by said indictment; and under extradition proceedings he was returned to said Plumas county. He moved to set aside the indictment, and his motion was granted, and he was discharged from custody. · Within two hours afterwards a complaint for embezzlement was made before a justice of the peace, and he was arrested upon a warrant issued by said justice. He now applies to this court under the proceeding of *habeas corpus* to be discharged.

There is a treaty between the government of the

Hawaiian Islands and the government of the United States for the return from one to the other country of persons charged with certain enumerated crimes; but the crime of embezzlement is not one of the crimes so enumerated. (Said treaty to be found in 7 Am. & Eng. Ency. of Law, p. 606.)

The first point made by the petitioner is that he cannot be returned to this country and tried here for any crime not enumerated in the treaty. There are certain very strong authorities to sustain this point, particularly *Commonwealth* v. *Hawes,* 13 Bush, 697; 26 Am. Rep. 242; *United States* v. *Watts,* 8 Saw. 370; *Holmes* v. *Jennison,* 14 Pet. 540, 593; *United States* v. *Rauscher,* 119 U. S. 407; Spear on Extraditions, pp. 221, 205 et seq. The questions raised by this point need not, however, be here passed upon definitely, because we think that the petitioner should be discharged upon the second point made by his counsel, to wit, that the indictment upon which the extradition was secured having been set aside, and the petitioner entirely discharged, he cannot afterwards be held upon the complaint before a justice of the peace, without having been given reasonable time to return to the country from whence he was brought. The treaty above mentioned provides that a person charged with crime shall be extradited only "upon such evidence of criminality as according to the laws of the place where the person so charged shall be found would justify his apprehension and commitment for trial if the crime had been committed there." It further provides that the person demanded shall be brought before a court of the country in which he is "to the end that the evidence of criminality may be heard and considered." And if upon such hearing the magistrate is satisfied that the evidence sustains the charge, he may issue a warrant for the surrender of the fugitive. Now, in the case at bar, it appears that the judge at the Hawaiian Islands was presented with a certified copy of the indictment that had been found against the petitioner, with the affidavit of the foreman of the grand jury, and that he acted entirely

upon the sufficiency of the evidence as afforded by said indictment. And the indictment upon which the authorities of the Hawaiian Islands acted, and which it may reasonably be supposed was considered as sufficient evidence for action there, having been set aside and held invalid by the court in Plumas county, and the prisoner having been discharged under said indictment, upon which the extradition papers were based, he could not be held upon a complaint before a magistrate and proceedings which were entirely unknown to the authorities of the Hawaiian Islands, and upon which their order for the arrest of the fugitive was not in any way based. As was said in *Commonwealth* v. *Hawes*, 13 Bush, 697, 26 Am. Rep. 242, "By providing the terms and conditions upon which a warrant for the arrest of the alleged fugitive may be issued, and confining the duty of making the surrender to cases in which the evidence of criminality is sufficient, according to the laws of the place where such fugitive is found, to justify his commitment for trial, the right of the demanding government to decide finally as to the propriety of the demand and as to the evidences of guilt is as plainly excluded as if that right had been denied by express language. It would scarcely be regarded an abuse of the rules of construction from these manifest restrictions unaided by extraneous considerations, to deduce the conclusion that it was not contemplated by the contracting parties that an extradited prisoner should, under any circumstances, be compelled to defend himself against a charge other than one upon which he is surrendered, much less against one for which his extradition could not be demanded." And I think the right under the treaty is one which the petitioner himself may assert.

The petitioner, in my opinion, should be discharged from custody.