THE PEOPLE OF THE STATE OF NEW YORK ex rel. P. ALBERT STILWELL, Relator, *v.* JOHN J. HANLEY, as Warden of the City Prison, Borough of Manhattan, County and State of New York, Defendant.

Supreme Court, New York Special Term, December 22, 1924.

Extradition — relator is charged with grand larceny and violation of Penal Law, § 956, prohibiting wrongful hypothecation of securities — relator, British subject, was extradited from England for embezzlement and fraud by agent — relator was acquitted of grand larceny — relator may be tried for violation of Penal Law, § 956.

The relator, a subject of Great Britain, who was extradited from England following indictment in this State charging him with grand larceny and the violation of section 956 of the Penal Law which prohibits wrongful hypothecation of securities by a broker, may be held for trial on the charge of violating section 956 of the Penal Law, although he has been acquitted of the charge of grand larceny, since it appears that he was extradited on a requisition of the President stating that he was charged with the crimes of embezzlement, and fraud by a bailee, agent and trustee; that a verbatim copy of section 956 of the Penal Law was attached to the requisition; and that he was surrendered by the British authorities with notice that he was to be tried on both counts. The relator cannot defeat the jurisdiction of the court to which his own government was willing to surrender him.

HABEAS CORPUS proceeding.

*Patrick J. Walsh* [*Almuth C. Vandiver* of counsel], for the relator.

*Joab H. Banton, District Attorney* [*William B. Moore* of counsel], for the defendant.

PROSKAUER, J.:

To a writ of habeas corpus respondent returns that relator is detained under a judgment of the Court of General Sessions convicting him of violation of section 956 of the Penal Law, which prohibits wrongful hypothecation of securities by a broker. Stilwell challenges the jurisdiction of the Court of General Sessions to render this judgment. A British subject, he was extradited from England on requisition of the President, stating that he was " charged with the crimes of embezzlement and fraud by a bailee, agent and trustee (known in the laws of the State of New York

as Grand Larceny in the First Degree and Violation of Sec. 956 of the Penal Code)." He was acquitted on the grand larceny counts and convicted only for violation of section 956 of the Penal Law. He challenges jurisdiction on the ground that violation of section 956 is not in itself an extraditable crime and that he was, therefore, entitled to be permitted to return to England before trial upon this count.

By stipulation before me the extradition proceedings and the record of the trial in so far as it bears upon the extradition question are in evidence before me.

Concededly, a prisoner extradited for an offense covered by the treaty cannot be tried and convicted for another offense. Many authorities hold this. (*People ex rel. Young* v. *Stout*, 81 Hun, 336; affd., 144 N. Y. 699; *United States* v. *Rauscher*, 119 U. S. 407; *Ex Parte Lamar*, 274 Fed. 160.) Some in so holding state the dictum that inasmuch as the treaty is the supreme law of the land, the prisoner cannot be convicted of any crime not specifically covered by the extradition treaty. (*United States* v. *Rauscher, supra.*) I find no authority, however, which holds that a prisoner cannot be tried for and convicted of a crime for which he was expressly extradited, merely because that crime was not extraditable. This distinction is clearly made in *Ex Parte Foss* (102 Cal. 347), where De Haven, J., writes: " The crime with which the petitioner is charged not being an extraditable offense under the treaty between the United States and the government of the Hawaiian Islands, it must be presumed that the surrender of the petitioner was made by the latter in the exercise of its own sovereign discretion and as an act of comity." Referring to such authorities as *United States* v. *Rauscher* (*supra*), he continues: " Those cases simply declare that when a defendant has been surrendered in pursuance of a treaty for trial upon a specific charge named therein, he cannot be placed upon trial for any other than the particular offense named in the extradition proceeding."

The treaty with Great Britain covers " fraud by bailee, banker, agent, factor, trustee * * * made criminal by the laws of both countries." (Extradition Treaty, concluded July 12, 1889.) Neither side gives evidence as to whether the equivalent of section 956 (which under *People* v. *Atwater*, 229 N. Y. 303, does not involve criminal intent, but only intent wrongfully to rehypothecate), appears in the British law. But that is here immaterial. The British authorities extradited for fraud by a bailee, etc., known as " violation of section 956." A verbatim copy of that section was annexed to the requisition. They surrendered Stilwell with notice that he was to be tried on both the grand larceny and the statu-

tory counts. They could voluntarily, as an act of comity, surrender Stilwell to be tried for any offense (*Greene* v. *United States,* 154 Fed. 401; certiorari denied, 207 U. S. 596; *Ex Parte Foss, supra;* 11 R. C. L. 715; Clarke Extradition [4th ed.], 87), even though not required so to do by the treaty. He cannot defeat the jurisdiction of the court to which his own government has willingly surrendered him.

This principle is firmly grounded in international law. In 1 Oppenheim International Law (3d ed. 510) there is reported the decision of the Hague Tribunal in the case of one Savarkar, who was surrendered by French police officers to the British informally and irregularly. The decision, approved by Oppenheim, asserted " that there was no rule of international law imposing * * * any obligation on the power which has a prisoner in its custody, to restore him on account of a mistake committed by the foreign agent who delivered him up to that power." Oppenheim continues: " Somewhat similar to the case of Savarkar is the remarkable case of Lamirande which occurred in 1866. He was a French subject, and was arrested in Canada under an extradition warrant on a charge of forgery. He applied to a superior tribunal on the ground that his surrender was not justified by the Extradition Treaty with France, but was erroneously surrendered to France before his application was heard. The judge and the British Law officers took the view that the surrender of Lamirande was not justified by the Extradition Treaty, and the British Government asked the French Government to remit him to Canada, not indeed on the ground of any international obligation, but as a matter of comity. However, the French Government refused to accede to this request, contending that the error through which Lamirande had been surrendered did not afford any ground for removing him from the control of the French courts."

*A fortiori* where Stilwell was extradited by formal proceedings and where the British government itself makes no complaint, its subject cannot complain that his own country acted with more liberality than is exacted by the treaty. The British government could have surrendered him for trial on the grand larceny count alone. It chose to surrender him without reservations for trial on the whole indictment. The Court of General Sessions, therefore, had jurisdiction to try him on both counts and the writ must be dismissed.