**UNITED STATES ex rel. DONNELLY v. MULLIGAN, Marshal, et al.**

**No. 359.**

Circuit Court of Appeals, Second Circuit.
April 1, 1935.

Samuel Hershenstein, of New York City (T. Bernard Eisenstein, of New York City, of counsel), for relator-appellant.

Murray, Hollaman & Lockwood, of New York City (R. D. Murray, of New York City, of counsel), for appellees.

Before MANTON, L. HAND, and CHASE, Circuit Judges.

MANTON, Circuit Judge.

In May, 1934, the relator was extradited from France, after the expiration of a sentence he had served there for the crime of larceny, to be tried in New York county, state of New York. He was not brought to trial on that indictment, and his re-extradition to Canada was applied for and granted.

On an appeal taken from an order dismissing a previous writ of habeas corpus, we reversed the decision of the District Court. U. S. ex rel. Donnelly v. Mulligan, 74 F.(2d) 220, 223. We held that the French Treaty granted to a fugitive, extradited thereunder, 30 days' immunity from arrest for any crime committed prior to the crime for which he had been extradited; that the grant of immunity was broad enough to include apprehension for re-extradition to a third country. At that time there was presented to us a communication from the French Foreign Office to the Canadian Legation at Paris, which stated that in the event that the Canadian government at some future date requested the extradition of the appellant from the United States, the French Republic "would be glad to support such a request." We held that, while a sovereign nation is under no duty to deliver up one seeking asylum within its borders except as provided by treaty, such sovereign is under no duty to afford asylum to a fugitive and may expel him without giving the fugitive any reason to complain. We said that the demanding state could not exercise any rights with respect to the fugitive other than those conceded by the surrendering state, for to do so would be bad faith on the part of the demanding state, and appellant could be deprived of his asylum in France only by the action of France which, under the rule of international law, had a right to give him asylum or to take it from him. We therefore held that the communication from the French Foreign Office to the Canadian Legation was not a document upon which this government would be justified in granting the relief sought in his re-extradition to Canada. We there said that the willingness to consent that this appellant be taken to Canada is not a consent to re-extradition to a third country within the terms of the treaty between France and this country, and that, in the absence of such consent, the right to deny asylum to the criminal was that of France; there being an unrestricted right of refusal to consent to extradition from France to Canada on the part of the former. We said: "It should be borne in mind that, while the *formalities* attending an extradition are purely administrative functions which the accused and the state of asylum can properly waive, the *diplomatic guaranties*—in the instant case, the 30-day period of immunity—which are accorded for the benefit of the accused, cannot be violated by the demanding state, without the consent of the surrendering state."

Thereafter, the Department of State, through the American Embassy at Paris, petitioned the French Foreign Office, requesting France to authorize the United States to re-extradite the appellant to Canada, there to be tried on a charge set forth in a warrant issued against him at Montreal, Canada, June 30, 1933. There was issued a decree of the Republic of France, as follows: "The Government of the United States of America is authorized to re-extradite the said Eaton (Franck-Ernest), alias Donnelly (Stewart), to the Canadian authorities, in order that he may be tried on the charge of swindle quoted above."

The Commissioner in the Southern District of New York, on a complaint sworn to by His Britannic Majesty's Consul at the Port of New York, issued a warrant for appellant's arrest; appellant being arrested immediately upon his discharge under the original warrant. The appellant sued out writs of habeas corpus and of certiorari, which the District Court dismissed, and the relator appeals.

The Extradition Treaty between the United States and France (article 7, 37 Stat. 1531) grants to an extradited fugitive liberty for 30 days before he can be tried, punished, or arrested for any other crime or offense committed prior to his extradition. But now the President of the French Republic, upon the opinion of the Court of Appeals of Paris, has made a decree under date of January 9, 1935, which authorizes the United States to re-extradite the appellant to Canada in order that he may be tried upon the charge there pending against him.

The appellant cannot complain if France acted under the treaty, nor can he complain if it acted independent of the treaty as an act of international comity. The French decree consents to his re-extradition; moreover, it may be regarded as a consent given independently of the treaty and as an act of international comity. If under the treaty, it is conclusive upon the appellant. France had the right to give or withhold the asylum accorded him, as it saw fit. And it has withheld asylum for the purpose of re-extradition to Canada. The appellant cannot question this action on the part of France. Greene v. United States (C. C. A. 5) 154 F. 401.

In Ker v. People of the State of Illinois, 119 U. S. 436, 7 S. Ct. 225, 228, 30 L. Ed. 421, the fugitive committed a crime in Chicago, and fled to Peru. The United States asked for his extradition from Peru, under a treaty between the two countries, but before extradition papers were presented to the Peruvian government, representatives of the United States procured Ker's arrest and brought him to Chicago, where he was tried and convicted. Ker claimed that he had been kidnapped and questioned the legality of his deportation to this country. The court held that Ker had no right of asylum in Peru; that Peru could surrender him to the United States under the treaty or independently of the treaty, without giving him any cause of complaint; that if provisions of the treaty had been violated by the United States, it was Peru which could complain, not the fugitive. The court said: "The right of the government of Peru voluntarily to give a party in Ker's condition an asylum in that country is quite a different thing from the right in him to demand and insist upon security in such an asylum. The treaty, so far as it regulates the right of asylum at all, is intended to limit this right in the case of one who is proved to be a criminal fleeing from justice; so that, on proper demand and proceedings had therein, the government of the country of the asylum shall deliver him up to the country where the crime was committed. And to this extent, and to this alone, the treaty does regulate or impose a restriction upon the right of the government of the country of the asylum to protect the criminal from removal therefrom." See, also, Ex parte Foss, 102 Cal. 347, 36 P. 669, 25 L. R. A. 593, 41 Am. St. Rep. 182, People v. Pratt, 78 Cal. 345, 20 P. 731. The right of the United States to demand a fugitive and to deal with him when delivered is conferred by treaties and statutory enactment, but the request to re-extradite him to Canada at the latter's request is entirely different. France, by its decree, has delivered the appellant to the United States for re-extradition to Canada, and the United States now is carrying out the purpose of the French decree.

Section 659, title 18, U. S. Code (18 US CA § 659), it is said, clothes the appellant with immunity from arrest under United States v. Rauscher, 119 U. S. 407, 7 S. Ct. 234, 30 L. Ed. 425. That section empowers the President to take the necessary measures for a delivered fugitive's transportation, and for his safe-keeping and security against lawless violence until the conclusion of his detention and a reasonable time thereafter. But the appellant, now here for re-extradition to Canada under the more recent consent and decree of France, is in a different situation. He must answer the demand

of Canada for his extradition. Extradition treaties are for the benefit of the contracting parties and are a means of providing for their social security and protection against criminal acts, and it is for this reason that rights of asylum and immunity belong to the state of refuge and not to the criminal.

█ The evidence before the Commissioner was sufficient to warrant the appellant's commitment for action by the Department of State. The fraud which he is charged to have committed in Canada was a race-track swindle equivalent to the crime of larceny in this country. We need not set forth its details. It is sufficient to say that we have examined the record and find that there is there presented reasonable ground to suppose him guilty, so as to make it proper that he should be tried and should, in good faith, be delivered to the demanding government for a trial. Glucksman v. Henkel, 221 U. S. 508, 31 S. Ct. 704, 55 L. Ed. 830; Fernandez v. Phillips, 268 U. S. 311, 45 S. Ct. 541, 69 L. Ed. 970; U. S. ex rel. Klein v. Mulligan (C. C. A.) 50 F.(2d) 687.

Order affirmed.